```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                  DIVISION OF ST. THOMAS & ST. JOHN

VIRGIN ISLANDS UNITY DAY         )
GROUP, INC.,                     )
                                 )
               Plaintiff,        )
                                 )     Civil No. 2008-47
        v.                       )
                                 )
GOVERNMENT OF THE VIRGIN         )
ISLANDS, ROY MARTIN, in his      )
official capacity as Tax         )
Assessor,                        )
                                 )
               Defendants.       )
_____)
```

**ATTORNEYS:**

**James M. Derr, Esq.**
St. Thomas, U.S.V.I.
    *For the plaintiff.*

**Carol Thomas-Jacobs, AAG**
St. Thomas, U.S.V.I.
    *For the defendants.*

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is the motion by the Virgin Islands Unity Day Group, Inc. ("VIUDG") for reconsideration of the Court's January 31, 2011, Memorandum Opinion & Order dismissing this action as moot.

### I. FACTS

VIUDG is a not-for-profit corporation organized under Virgin

Islands law.  VIUDG describes itself as an association of Virgin Islands taxpayers.

VIUDG initiated this action in April 2008 against the Government of the Virgin Islands ("the Government") and Roy Martin, in his official capacity as Tax Assessor (together, "the Defendants").

VIUDG alleged that the Defendants entered into a settlement agreement in another action before this Court in *Berne Corp. v. Government of the Virgin Islands*, Civ. No. 2000-141 (D.V.I. filed July 7, 2000), and consolidated cases (the "Tax Litigation").  In the Tax Litigation, owners of commercial real estate in the Virgin Islands alleged that the tax system violated their procedural and substantive due process rights under the Fourteenth Amendment of the United States Constitution.  *Berne Corp. v. Gov't of the V.I.*, 120 F.Supp. 2d 528, 535 (D.V.I. 2000).

The Plaintiffs refer to a number of events surrounding the Tax Litigation in pleading their complaint.  To understand and give context to their claims, a brief overview of some of the procedural history in the Tax Litigation is necessary.

On May 12, 2003, the Court issued a Decree in the Tax Litigation which had an impact beyond the parties in that matter.  The Court's May 12, 2003 Decree enjoined the Government of the

*Virgin Islands Unity v. Gov't of the Virgin Islands, et al.*
Civil No. 2008-47
Order
Page 3

Virgin Islands from assessing and issuing tax bills for all Virgin Islands real property owners until certain conditions were met.  The first condition of the May 12, 2003 Decree was the establishment of a property tax system that reliably and credibly assessed and taxed all real property based on its actual value. The second condition required the Government to demonstrate to the Court's satisfaction that it has a functioning Board of Tax Review that consistently holds hearings and reaches determinations on appeals within sixty days. The Court permitted the Government to issue bills based on the assessment values for the 1998 calendar year reflected in the 1999 tax bills[1] if it provided a mechanism to adjust the assessments and bills retroactively.

On March 10, 2008 the Virgin Islands legislature passed Act 6991, 2008 V.I. Sess. Laws 6991, which provided for the Governor to issue tax bills for 2006 during the 2008 fiscal year.  In

---

[1] In issuing its May 12, 2003 Decree the Court explained the requirement that the Government have certain procedures in place prior to having permission to issue tax bills during the pendency of the injunction:

> Because the 1999 property tax bills are illegal, being produced by an assessment system that violates federal law, the 1999 bills cannot form the basis for payment of property taxes for later years, unless the Legislature further amends 33 V.I.C. § 2402, to provide for retroactive adjustment of the bills for 1999, 2000, 2001, 2002, 2003, and 2004, once a fair and equitable system capable of consistently assessing their properties at their actual values is in place.

*Berne Corp. v Gov't of the V.I.*, 262 F.Supp.2d 540, 572 (D.V.I. 2003).

*Virgin Islands Unity v. Gov't of the Virgin Islands, et al.*
Civil No. 2008-47
Order
Page 4

August 2008, the Government issued tax bills to Virgin Islands real property owners at rates not based on the 1998 assessment values. The Court found such issuance to be an act in contempt of the Court's May 12, 2003 injunction and ordered rescission of the illegaly issued bills. The Government appealed that determination to the Court of Appeals for the Third Circuit. The Third Circuit affirmed the Court's contempt finding.

In September 2009, the Government stated in an evidentiary hearing in the Tax Litigation that the 2006 tax bills issued at rates other than those based on the 1998 assessment levels were without effect.

On March 10, 2010, the Virgin Islands legislature passed Act 7154, 2010 V.I. Sess. Law 7154. That Act provided that "the Tax Assessor . . . may issue real property tax bills and collect taxes at the 1998 rate and assessment level for tax years 2006, 2007, 2008, 2009, and for future tax years, or until such time as the District Court vacates the May 12, 2003 Injunction or permits the Tax Assessor to collect property taxes at a rate other than that set forth in the Court's August 13, 2003 Order."

On January 20, 2011, the Court vacated the portion of the May 12, 2003 Decree enjoining the Government from issuing and collecting tax bills at rates other than the 1998 assessment values.

*Virgin Islands Unity v. Gov't of the Virgin Islands, et al.*
Civil No. 2008-47
Memorandum Opinion
Page 5

In Count One of its amended complaint, VIUDG claims that the Government violated 42 U.S.C. § 1983 ("section 1983") because the reassessment of real property conducted by the company the Government hired to conduct the reassessment, BearingPoint, denies members of the VIUDG substantive due process. Count Two asserts a section 1983 claim, stemming from the Government's alleged denial of meaningful review of the taxes assessed using the BearingPoint system. Count Three asserts a section 1983 claim in connection with BearingPoint allegedly classifying St. John property differently from similar property in St. Croix and St. Thomas "without reason or justification." (Am. Compl. ¶ 28.) In Count Four, VIUDG seeks declaratory and injunctive relief.

In a January 31, 2011, Memorandum Opinion & Order, the Court noted that there was no active tax bill employing the BearingPoint project valuation. In the absence of an instrument applying the BearingPoint methodology, the Court reasoned that the plaintiff's claims were moot.

## II. DISCUSSION

Motions for reconsideration are governed by Local Rule of Civil Procedure 7.3 which provides:

> A party may file a motion asking the Court to reconsider its order or decision. Such motion shall be filed within fourteen (14) days after the entry of the order or decision unless the time is extended by the Court. Extensions will only be granted for good cause

*Virgin Islands Unity v. Gov't of the Virgin Islands, et al.*
Civil No. 2008-47
Memorandum Opinion
Page 6

shown. A motion to reconsider shall be based on:

    1. intervening change in controlling law;
    2. availability of new evidence, or;
    3. the need to correct clear error or prevent manifest injustice.

LRCi 7.3 (2009); *see also Max's Seafood Café, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

### III. **ANALYSIS**

#### A. Clear Error

VIUDG argues that this Court erred in conflating "two separate components" of the BearingPoint system: data collection and data analysis. (Mot. for Recons. of Jan. 31, 2011 at 5.) VIUDG does not dispute that the algorithm used in BearingPoint's mass appraisal model for the 2006 assessments is now obsolete. The plaintiff concedes that any controversy premised on such algorithm is no longer live. However, VIUDG asserts that insofar as their claims challenge flawed data collected by BearingPoint, they remain active.

The Supreme Court described the role of assessment in the property tax system in *Hibbs v. Win,* 542 U.S. 88 (2004). The Supreme Court's discussion there, noted that an assessment serves as an essential component in the calculation of the property tax

*Virgin Islands Unity v. Gov't of the Virgin Islands, et al.*
Civil No. 2008-47
Memorandum Opinion
Page 7

owed by a resident:

> The term "assessment" is used in a variety of ways in tax law. In the property-tax setting, the word usually refers to the process by which the taxing authority assigns a taxable value to real or personal property. See, *e.g.,* F. Schoettle, State and Local Taxation: The Law and Policy of Multi-Jurisdictional Taxation 799 (2003) ("ASSESSMENT-The process of putting a value on real or personal property for purposes of a tax to be measured as a percentage of property values. The valuation is ordinarily done by a government official, the 'assessor' or 'tax assessor,' who will sometimes hire a private professional to do the actual valuations."); Black's Law Dictionary 112 (7th ed.1999) (defining "assessment" as, *inter alia:* "Official valuation of property for purposes of taxation <assessment of the beach house>.-Also termed *tax assessment.* Cf. appraisal."). See also 5 R. Powell, Real Property § 39.02 (M. Wolf ed.2000). To calculate the amount of property taxes owed, the tax assessor multiplies the assessed value by the appropriate tax rate. See, *e.g.,* R. Werner, Real Estate Law 534 (11th ed.2002).

*Hibbs v. Winn*, 542 U.S. 88, 100 n. 3 (2004).

When analyzing VIUDG's claims, this Court determined that the proper subject of its mootness assessment was not the Government's tax assessment system in the abstract, but rather a tax obligation generated using a tax assessment.

"The doctrine of mootness is a logical corollary of the 'case or controversy' requirement of Article III of the Constitution." *Better Gov't Ass'n v. Dept. of State*, 780 F.2d 86, 91 (D.C. Cir. 1986). A piece of this requirement is that the plaintiff has suffered an injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)("the plaintiff must have

*Virgin Islands Unity v. Gov't of the Virgin Islands, et al.*
Civil No. 2008-47
Memorandum Opinion
Page 8

suffered an 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized . . . ."). As the Court articulated in its January 31, 2011, Memorandum Opinion & Order, "[a]bsent the application of the values assessed, an assessment system is incapable of inflicting injury on an individual." *V.I. Unity Day Group*, *Inc.* v. *Gov't of the V.I.*, 2011 WL 320995, at * 3 (D.V.I. Jan. 31, 2011). With the rescission of the unlawfully issued 2006 tax bills, there was no Government instrument applying the BearingPoint data.

Notwithstanding that state of affairs, VIUDG asserts that the Government will inevitably employ the BearingPoint data once it has the opportunity to use valuations other than valuations made at the 1998 assessment levels.[2] However prior to being so employed, the raw data lacks efficacy at this time.

Courts have found the injury requirement satisfied in some cases where a challenge is launched prior to a statute becoming effective. *See, e.g., Virginia v. American Booksellers Assoc.*, 484 U.S. 383, 393 (1988)(noting that a law could be challenged prior to its effective date, where the plaintiffs had "alleged an

---

[2] VIUDG notes that the 2010 property tax bills would be the first tax bills for which the Government could employ the BearingPoint data. VIUDG notes that a settlement agreement entered into in the Tax Litigation provides that the 2007, 2008, and 2009 property tax bills be computed using the 1998 assessed values.

*Virgin Islands Unity v. Gov't of the Virgin Islands, et al.*
Civil No. 2008-47
Memorandum Opinion
Page 9

actual and well-founded fear that the law will be enforced against them"); *ACLU v. Johnson*, 194 F.3d 1149, 1155 (10th Cir. 1999)(same). The legislation at issue in such cases, however, does not provide a compelling analog to the BearingPoint data. There has been no effective date or other forthcoming benchmark for use given to the BearingPoint data. As such, the Court finds that the specter of the use of the raw data at some indeterminate time in the future does not rise to the level of a cognizable injury.

### B. Newly Available Evidence

VIUDG offers another basis for reconsideration. It points to two pieces of evidence that it claims are "newly available evidence" bearing on a mootness examination. VIUDG argues that this evidence either establishes that its claims are still viable, or in the alternative, demonstrates that its claims fall within the "capable of repetition yet evading review" exception[3] to the mootness doctrine.

To support a motion for reconsideration on the basis of

---

[3] Under the "capable of repetition" exception, "a court may exercise its jurisdiction and consider the merits of a case that would otherwise be deemed moot when '(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Rendell*, 484 F.3d 236, 241 (3d Cir. 2007)(quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

*Virgin Islands Unity v. Gov't of the Virgin Islands, et al.*
Civil No. 2008-47
Memorandum Opinion
Page 10

newly available evidence, the movant must "show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence [during the pendency of the motion]." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,* 90 F.3d 1264, 1269 (7th Cir. 1996) (alteration in original) (quoting *Engelhard Indus., Inc. v. Research Instrumental Corp.,* 324 F.2d 347, 352 (9th Cir. 1963)).

The VIUDG asserts that a contract between the Government of the Virgin Islands and BearingPoint is newly available evidence. The contract was entered into in May 2007. VIUDG filed a motion to compel the production of the contract on November 16, 2009. The Government moved to dismiss this action on mootness grounds on August 13, 2010. VIUDG filed its opposition on August 25, 2010. On September 13, 2010, the parties filed a notice that they were able to agree on several issues related to requests for production. The Government, *inter alia*, agreed to produce a copy of the BearingPoint contract. On September 20, 2010, the Magistrate Judge issued an order that the documents that were the subject of agreement outlined in the September 13, 2010, notice, would be produced within seven days. The record does not indicate the date on which the contract was actually produced. If that date fell before the Court's ruling, the contract would

*Virgin Islands Unity v. Gov't of the Virgin Islands, et al.*
Civil No. 2008-47
Memorandum Opinion
Page 11

have been known and available to VIUDG prior to the Court's disposition of the motion. Based on the information before the Court, it is unclear if the evidence constitutes "newly available evidence."

Even assuming *arguendo* that the contract is "newly available," it fails to support the conclusion VIUDG urges. A section of the contract outlines time frames for the reinspection of properties:

> Cyclical reinspections
>
> In addition to annual inspections of properties that have been sold, whose values have been appealed, or for which building permits have been issued, there should be a plan in place to ensure that no developed property goes for more than a predetermined number of years without a 'general maintenance' inspection to verify (or correct) data on the property and to record and update the system with any observed adjustments for
>
> condition or other items that can change over time, a minimum reinspection cycle of 10 years (requiring that each year 10% of properties be reinspected) is recommended. BearingPoint will work with the Office of the Tax Assessor to design and implement a plan to accomplish the decided upon cycle. BearingPoint will put in place a query routine on Sigma to annually select parcels for cyclical reinspection.

(Ex. A at 16, Pl.'s Mot. for Reconsideration.) VIUDG suggests that "[s]ince the valuation date for properties was January 1, 2006, this means it could be 2016 before a 100% reinspection and correction of data errors takes place." (Pl.'s Mot. for

*Virgin Islands Unity v. Gov't of the Virgin Islands, et al.*
Civil No. 2008-47
Memorandum Opinion
Page 12

Reconsideration 7.) VIUDG's reliance on this section as evidence of the viability of its claims is misguided. The contract's language regarding the 10-year reinspection cycle is in the manner of a recommendation, and contains no mandatory character. It thus fails to provide a firm basis for a "reasonable expectation" that the BearingPoint raw data will be used in the future.

VIUDG also suggests that statements made off the record during a December 13, 2010, deposition in this matter establish that its claims are still live. The plaintiff's attorney, James Derr, and a member of VIUDG, Myrtle Barry, have submitted affidavits detailing comments from the Tax Assessor. Derr and Barry assert that at the conclusion of the Tax Assessor's deposition, Derr inquired as to who would conduct the next assessment of real property in the Virgin Islands. The Tax Assessor allegedly responded that the Tax Assessor's office would continue to use the BearingPoint data. Statements made by the Tax Assessor in off the record discussions obviously do not constitute formal policy pronouncements. While the Court does not dismiss the possibility that the Tax Assessor's office may elect to use the BearingPoint raw data in the future, the nature of the comments do not provide certitude. The Court does not find that these alleged comments raise a "reasonable expectation"

*Virgin Islands Unity v. Gov't of the Virgin Islands, et al.*
Civil No. 2008-47
Memorandum Opinion
Page 13

that VIUDG will be subject to tax bills using the BearingPoint raw data again.

### IV. <u>CONCLUSION</u>

In the absence of a valid basis for reconsideration of its January 31, 2011, Memorandum Opinion & Order, the Court will deny the plaintiff's motion for reconsideration. An appropriate Order follows.

S\_____

**CURTIS V. GÓMEZ**
**Chief Judge**